# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,	)
                Plaintiff,	)	Case No. 2:12-cr-236-APG-GWF
                )
vs.	)	**ORDER**
                )
VINAY BARARIA,	)	**Motion to Require Disclosure of Information - #64**
                Defendants.	)

This matter is before the Court on Defendant's Motion to Require Disclosure of Material Information (#64), filed on February 22, 2013; the Government's Response to Defendant's Motion (#71), filed on March 11, 2013; Defendant's Reply to the Government's Response (#75), filed on March 18, 2013; Defendant's Notice to the Court (#89), filed on April 9, 2013; the Government's Response to Defendant's Notice to Court (#93), filed on April 15, 2013; and Defendant's Supplement to 04/16/2013 Hearing on Motion to Require Disclosure of Material Information (#99), filed on April 22, 2013. The Court conducted a hearing in this matter on April 16, 2013.

## BACKGROUND

The indictment in this case charges Defendant Vinay Bararia with conspiracy to distribute controlled substances, Oxycodone and Hydrocodone, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 846. Defendant is also charged in Counts Two through Six of the indictment with distribution of Oxycodone or Hydrocodone in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. Count Seven charges him with possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2.

. . .

1	Defendant was originally charged in a criminal complaint filed on March 2, 2012.
2	*Complaint (#1)*. The complaint alleged that on July 19 and 20, 2011 Drug Enforcement
3	Administration ("DEA") Special Agent ("SA") Prochnow, working in an undercover capacity,
4	exchanged text messages with Defendant Bararia to arrange for the purchase of 500 hydrocodone
5	pills. SA Prochnow met with Defendant Bararia on July 20, 2011 in the parking lot of the
6	Centennial Hills Hospital where Defendant was employed as a physician. During that meeting,
7	Defendant Bararia allegedly sold 498 hydrocodone/acetaminophen pills to SA Prochnow.
8	Defendant allegedly informed the agent that his source of supply should have more pills on
9	Monday, which the source of supply would obtain from locations in California. *Complaint (#1)*, ¶
10	4. Thereafter SA Prochnow arranged to meet with Defendant Bararia in the parking lot of the
11	Centennial Hills Hospital on July 28, 2011, at which time Defendant allegedly sold 918 oxycodone
12	pills to the agent. ¶¶ 6-8. On August 22, 2011, September 22, 2011, and November 8, 2011,
13	Defendant Bararia allegedly sold 1300, 1120 and 266 oxycodone pills, respectively, to SA
14	Prochnow in the parking lot of the Kopper Keg pub, located near Centennial Hills Hospital. ¶¶ 10-
15	17. SA Prochnow thereafter allegedly arranged to meet with Defendant Bararia in the Kopper Keg
16	pub parking lot on March 1, 2012 to purchase 1800 oxycodone pills. Before this transaction could
17	occur, the police stopped Defendant's vehicle and arrested him for the prior narcotics transactions.
18	The officers also searched Defendant's vehicle pursuant to a search warrant and discovered 1800
19	oxycodone pills in the cab of Defendant's automobile and additional oxycodone pills in the trunk.
20	¶¶18-21.
21	Defendant Bararia was initially released from custody on March 2, 2012, subject to Pretrial
22	Services supervision. On May 2, 2012, the Pretrial Services Officer moved to revoke Defendant's
23	pretrial release on the grounds that he had prescribed controlled substances to his patients after his
24	privileges had been suspended. *Petition for Action on Conditions of Pretrial Release (#14, #15)*.
25	Defendant appeared in court on May 4, 2012 at which time he was detained pending the revocation
26	hearing. Defendant reportedly suffered a medical episode on that date. Defendant was released
27	from custody on May 16, 2012, but his pretrial release was later revoked in October 2012 after he
28	again unlawfully prescribed controlled substances to patients. *Minutes of Proceedings (#46), Order*

*of Detention (#47).*

Defendant has provided a "Chronology of Investigation" which outlines his version of the criminal investigation against him and the basis for items sought in his discovery motion. *See Supplement (#99), pgs. 2-6.* The Government has not responded to Defendant's *Supplement* and the Court makes no finding as to the Chronology's accuracy.

Defendant alleges that in February 2011, Bryan Semel, who had been arrested in Nebraska, claimed that Dr. Bararia was his supplier, "who will not fake prescriptions." On May 23, 2011, Sari Gray met with DEA agents and provided information on three men who were allegedly distributing controlled substances. Sari Gray claimed that Defendant Bararia was writing fake prescriptions. On June 1, 2011, Sari Gray arranged a "transaction" between Defendant Bararia and SA Prochnow. Sari Gray was in the undercover vehicle and witnessed the transaction. During this transaction, Defendant Bararia pointed to Arsen Manukyn, who was standing by his car, as his source of supply for controlled substances. Some time between June 1 and June 16, 2011, Defendant Bararia and Sari Gray had "an inappropriate encounter." On June 6, 2011, the Government analyzed a "Prescription Monitoring Report" on Defendant Bararia and concluded that he was over-prescribing. A second "transaction" occurred on June 16, 2011. Sari Gray was not in the vehicle at the time of this transaction, but spoke to Defendant Bararia outside the vehicle immediately afterward. The conversation was recorded.

On June 27, 2011, the investigation of Defendant Bararia was approved as a "Priority Target Case." On August 3, 2011, T.J. Labissonaire was arrested in Seattle and claimed that his supplier was "a 'dirty doctor' in Las Vegas named 'Dr. B.'" On September 1, 2011, Government agents debriefed Sari Gray who told the agents that she did not know Defendant Bararia's supplier. Sari Gray was further debriefed by Government agents on September 27, 2011. She admitted that she had been seeing Defendant Bararia without Government supervision and admitted that she owed Defendant Bararia $200 since January 2011. Sari Gray stated that Defendant Bararia told her that someone was writing false prescriptions from his office and that he had set up a secret code with a pharmacy to identify genuine prescriptions.

. . .

On September 29, 2011, "Operation Slumdog Billionaire" received OCDTEP approval.[1] During October and November 2011, the Government investigated Defendant Bararia's prescribing patterns with Green Valley Drugs. Between November 25 and December 28, 2011, several text messages were exchanged between SA Prochnow, Defendant Bararia and an individual named "Jose," whom Defendant states "is likely Reynaldo Cabrera, a former patient and intimate of Vaughtriva Isaac and Sari Gray," regarding the purchase of cocaine which began with SA Prochnow inquiring about cocaine in July 2011.

Wiretapping began on January 7, 2012. The authorization for the wiretap was based on Task Force Officer (TFO) Melvin's affidavit that Defendant Bararia was part of a "complex" Armenian drug trafficking organization and the wiretap was necessary to investigate and ferret out the source of supply, flow of money, location of storage facilities, and distribution network, as traditional investigation procedures had allegedly failed. The affidavit also heavily relied on information obtained through Sari Gray, and stated that Defendant Bararia was involved in money laundering and potential Medicare fraud, in addition to distributing controlled substances. Defendant asserts that a high number of calls not subject to interception were intercepted and the Government failed to follow proper minimization procedures and violated minimization statutes. Defendant also asserts that the affidavit in support of the wiretap order contained omissions and misrepresentations and failed to show necessity and violated the statute. Defendant states that TFO Melvin's affidavit was used to support reauthorization of the wiretap, but that references to an "Armenian" drug trafficking organization were omitted from the reauthorization affidavit.

The Chronology states that Defendant Bararia was arrested on March 1, 2012 and his house, medical office, car and cellphone were searched. Defendant alleges that Special Agent Steve Smith told Defendant's wife that her unborn son would not see his father until he is an adult. Defendant also alleges that the agents took money from Defendant's daughters' piggy banks, seized the daughters' Ipads, and derided their standard of living. Defendant further asserts that there is a video-recording of the search of Defendant Bararia's Hotmail email account on March 2, 2012

---

[1] Defendant does not define "OCDTEP."

which shows the agent repeatedly viewing emails between Defendant Bararia and his bankruptcy attorney which were clearly marked as confidential and privileged information.

The criminal complaint against Defendant Bararia was filed on March 2, 2012. Defendant alleges that within weeks thereafter Vaughtriva Isaac and Sari Gray were arrested but let go and that no other arrests resulted from "Operation Slumdog Billionaire," and that Defendant Bararia is the only Hindu person involved in the "complex" Armenian DTO. The Chronology concludes by stating that Defendant Bararia was denied emergency medical care during a severe cardiac event on May 4, 2012; that the Marshal's Service refused to allow him to go to the hospital; and that Defendant was not evaluated by a physician until two days later.

## **DISCUSSION**

Defendant's Motion to Require Disclosure of Material Information (#64) identifies sixteen categories of records that Defendant alleges are material to his defense and relevant to the filing of pretrial motions. *Motion (#64), pgs. 2-3.* The Court recommended that the parties further confer to see if they could resolve some or all of the items in dispute. Defendant notified the Court that the Government had produced minimization memoranda for the electronic and wire interceptions, but the remaining requests were still in dispute. Following an April 16th hearing, Defendant filed his *Supplement (#99)* which states that most of documents sought by Defendant still remain in dispute. Defendant asserts that the requested documents are material to his defense and are needed to prepare (1) a motion to suppress electronic and wire interceptions, or alternatively, a motion for a *Franks* hearing, (2) a motion to suppress the evidence obtained during the search of Dr. Bararia's home, and (3) a motion to dismiss the indictment for outrageous Government conduct. Defendant also states that he intends to assert a defense of "sentencing entrapment."

There is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977). Certain discrete areas of discovery exist pursuant to Fed. R. Crim. P. 16, 18 U.S.C. § 3500 (the "Jencks Act"), and *Brady v. Maryland,* 373 U.S. 83 (1963) and *Giglio v. United States,* 405 U.S. 150 (1972) which require the disclosure of exculpatory evidence and certain impeachment evidence to the defense. *See United States v. Farris*, 2008 WL 3833882, *5-*6 (D.Nev. 2008). *See also United States v. Salyer*, 271 F.R.D. 148, 150 (E.D.Cal. 2010)

(stating that "[o]ver time a patch-work of statutory and judge-made rules has evolved to govern criminal discovery. Those rules include: (1) the Jencks Act; (2) the Federal Rules of Criminal Procedure; and (3) *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 215 (1963).").

1. **Discovery or Disclosure Under Rule 16, *Brady,* and Jencks Act/Rule 26.2.**

Defendant's Request No. 15 broadly seeks "all evidence or information, including rough notes, law enforcement personnel files and oral communications, known to the prosecution team, as defined by USAM 9-5.001, that tends to negate the guilt of Defendant or mitigates the offense as provided by Rule 3.8 of the Nevada Rules of Professional Responsibility."

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure states as follows:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody or control and:
>
> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

The Ninth Circuit has stated that Rule 16 grants defendants "a broad right of discovery." *See United States v. Doe*, 705 F.3d 1134, 1150 (9th Cir. 2013) and *United States v. Sever*, 603 F.3d 747, 752 (9th Cir. 2010). To obtain discovery pursuant Rule 16(a)(1)(E)(i), "the defendant 'must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense.'" *Doe*, 705 F.3d at 1150. "Neither a general description of the information sought nor conclusory allegations of materiality suffice." *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995), quoting *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). "[W]here . . . the government has shown that complying with the request would be unduly burdensome, it is incumbent on the district court to consider the government's interests asserted in light of the materiality shown." *Mandel*, 914 F.2d at 1219. Defendant has not made a showing of specificity which would require the Government to produce particular documents or information in response to Request No. 15.

Apart from Rule 16, the Government has a constitutional duty to disclose to the defendant, upon request, exculpatory evidence. *See Brady v. Maryland,* 373 U.S. 83 (1963) and its progeny. The Government is also obligated to turn over all material information that casts a shadow of a doubt on a government witness's credibility. *Giglio v. United States,* 405 U.S. 150, 154-55 (1972); *United States v. Bernel-Obeso,* 989 F.2d 331, 333-34 (9th Cir. 1993). No court order is required to obtain *Brady/Giglio* information and it must be disclosed at a time when it would be of value to the accused. *United States v. Aichele,* 941 F.2d 761, 764 (9th Cir. 1991), quoting *United States v. Davenport,* 753 F.2d 1460, 1462 (9th Cir. 1985). Disclosure should generally occur before trial. *United States v. Nagra,* 147 F.3d 875, 881 (9th Cir. 1988). A violation of defendant's constitutional right to a fair trial occurs when the Government fails to disclose exculpatory or impeachment evidence which is material to the issue of guilt or punishment.

In *United States v. Acosta*, 357 F.Supp.2d 1228, 1232 (D.Nev. 2005), the district court addressed the Government's duty to produce exculpatory or impeachment evidence in response to a pretrial motion for discovery. The court noted that the Supreme Court has recognized that the government's duty to disclose exculpatory evidence is broader than the narrower question of whether failure to disclose violates the Constitution, but has not delineated the scope of that duty. *Id.,* citing *Strickler v. Greene*, 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). *Acosta* held that this void is filled by Rule 3.8(d) of the Nevada Rules of Professional Conduct which has been adopted in the District of Nevada. Rule 3.8(d) states that "[t]he prosecutor in a criminal case shall [m]ake timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense . . . ." *Acosta* states that "[w]hether evidence is 'useful,' 'favorable,' or 'tends to negate the guilt or mitigate the offense' are semantic distinctions without a difference in the pretrial context." Rule 3.8(d) asks the same question as *Brady*, i.e. whether the evidence is favorable. *Acosta* also cited *United States v. Sudikoff*, 36 F.Supp.2d 1196, 1233 (C.D.Cal. 1999) which held, pursuant to *Brady,* that the government is required to disclose evidence favorable to the defendant regardless of whether it meets the constitutional materiality standard for reversal of a conviction. The Ninth Circuit has noted *Acosta* and *Sudikoff* with approval. *See United States v. Olsen*, 704 F.3d 1172, 1183 n. 3 (9th

7

Cir. 2013).

The Government has the duty to disclose evidence favorable to the accused even if it does not meet the constitutional standard of materiality for reversal of a conviction under *Brady*. It is also the Government's responsibility to determine whether information in its possession, custody or control is exculpatory or impeachment information. Thus, in response to Defendant's Request No. 15, the only order that the Court can or need give is that the Government comply with its duties under *Brady/Giglio* and Rule 3.8 and make timely disclosures of exculpatory or impeachment information prior to trial.

The district court has the authority under its supervisory powers to set a pretrial deadline for disclosure of *Brady* material based on the particular needs of the case. *United States v. Acosta*, 357 F.Supp.2d at 1236. *See also United States v. Diaz*, 2008 WL 360582 (N.D.Cal. 2008) *2-3, citing *United States v. Richter*, 488 F.2d 170, 173-74 (9th Cir. 1973) and *United States v. Starusko*, 729 F.2d 256, 261 (3d Cir. 1994). Such a deadline should be set, when necessary, to ensure that the defense receives the information in sufficient time to adequately prepare for trial. In this case, the Court will generally order that *Brady/Giglio* material be provided to the Defendant within a reasonable time as it becomes known to the Government, and that all such information, if known, should be produced no later than 30 days before trial. The Court may order that specifically requested documents or information be produced at an earlier date.

The government's duty to disclose *Brady/Giglio* information prior to trial may be limited by the Jencks Act which provides that "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena (sic), discovery or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). The Ninth Circuit has held that the Jencks Act controls over the government's duty to disclose exculpatory or impeachment evidence under *Brady*. *See United States v. Alvarez*, 358 F.3d 1194, 1211(9th Cir. 2004) and *United States v. Jones*, 612 F.2d 453, 455 (9th Cir. 1979).

*Acosta* suggested that the Jencks Act is rendered inapplicable by Rule 26.2 of the Federal Rules of Criminal Procedure. Rule 26.2 states that after a witness, other than the defendant, has

8

testified on direct examination, the court on motion of a party who did not call the witness, must order the production of any statement of the witness in the responding party's possession that relates to the subject matter of the witness's testimony. Rule 26.2 applies to testimony at a suppression hearing, a preliminary hearing, sentencing and other hearings. The rule still provides, however, that the witness's statement in subject to production only after he or she has testified. *Acosta* states that there is no irreconcilable conflict between pretrial *Brady* disclosures and the Jencks Act or Rule 26.2. The court suggested that the government's duty to disclose *Brady* material can be satisfied by providing a synopsis of the exculpatory or impeachment evidence contained in witness statements without producing the actual statements. The court also suggested that the evidence can be submitted to the court for *in camera* review to determine whether and under what limitations it should be produced. *Acosta*, 357 F.Supp.2d at 1235-36.

The *Acosta* court's analysis cannot be completely squared with Ninth Circuit case law. In *United States v. McKoy*, 78 F.3d 446, 450 n. 3 (9th Cir. 1996), the court stated that the Jencks Act has not been repealed, but its use may be limited by Rule 26.2. In *United States v. Alvarez*, 358 F.3d 1194, 1211(9th Cir. 2004), however, the court reiterated that "'[w]hen the defense seeks evidence which qualifies as both Jencks Act and Brady material, the Jencks Act standards control.'" *Alvarez* also rejected *in camera* review of Jencks Act material. The court stated that "[t]he Act does not authorize the district court to troll for evidence favorable to the defendant" and "the district court need not conduct an *in camera* review of the government's files for *Brady* evidence." In *United States v. Diaz*, 2008 WL 360582, *1 (N.D.Cal. 2008), the court stated that "the Ninth Circuit has plainly held that the Jencks Act trumps *Brady*" and "in light of these holdings, the government would be within its rights in withholding Jencks statements until after the witness testifies on direct – and this would be so even if the Jencks Act statements contain *Brady* information." The *Diaz* court therefore limited pretrial disclosure of *Brady* material to "non-Jencks *Brady* information" and stated that disclosure of *Brady* material in Jencks statements would be governed by the Government's agreement to disclose such statements before its witnesses were scheduled to testify. *Diaz*, at *1 n.1.

. . .

9

As *Diaz* indicates, pretrial disclosure of Jencks Act material may be provided for in a joint discovery agreement between the parties. The Government advised that Defendant Bararia has refused to enter into a joint discovery agreement. Defendant's counsel has not disputed that representation. Under *Alvarez* and *Jones,* the Court does not have the authority to require the Government to disclose statements governed by the Jencks Act or Rule 26.2 prior to the witness's direct testimony at trial or a hearing. This includes *Brady/Giglio* information that may be contained in such statements.

**2.     Disclosure of an Informant's Identity and Discovery of Information Pertaining to a Known Informant.**

Defendant's Request No. 5 asks for "[a]ll confidential informant files, including all information concerning the status of any paid informant used during the investigation herein and said informant's involvement in any other criminal investigation; full benefits and promises received in exchange for cooperation; full extent of each informant's assets; and status of each informant's tax liability." Request No. 6 seeks "[a]ll Communications, recorded or reported, between any task force member investigating this case, including the undercover agent, and any confidential informant used in this investigation." Although these requests pertain to "any informant," it appears from Defendant's Chronology that Sari Gray or other identified individuals may be known informants or cooperating witnesses for the Government.

The Government has a qualified privilege to protect the identity of a confidential informant from disclosure. *Roviaro v. United States*, 353 U.S. 53, 59 (1957), *McCray v. United States*, 386 U.S. 300, 308-09 (1967) and *United States v. Ramirez-Rangel*, 103 F.3d 1501, 1505 (9th Cir. 1997). The government's privilege must give way where the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause. The defendant has the burden of showing the need for disclosure and must show more than a mere suspicion that the informant has relevant and useful information. *Ramirez-Rangel*, 103 F.3d at 1505; *United States v. Amador-Galvan*, 9 F.3d 1414, 1417 (9th Cir. 1993); *United States v. Sanchez*, 908 F.2d 1443, 1452 (9th Cir. 1990); *United States v. Johnson*, 886 F.2d 1120, 1122 (9th Cir. 1989). Where the defendant has made a threshold showing that the

informant has information that would be "relevant and helpful" to the defense, the court may be required to conduct an *in camera* hearing to determine the relevancy and usefulness of the informant's information and whether his or her identity should be disclosed to defendant. *Amador-Galvan,* 9 F.3d at 1417; *United States v. Henderson*, 241 F.3d 638, 645-46 (9th Cir. 2001); *United States v. Bickle*, 2011 WL 1098969, *3 (D.Nev. 2011). Defendant Bararia has not made the threshold showing for the disclosure of the identity of any confidential informant whose identities has not already been disclosed or become known to the Defendant. Defendant's motion is therefore denied, without prejudice, as to any undisclosed confidential informants.

Once the identity of an informant has been disclosed or become known to the defendant, however, the privilege is no longer applicable. *Roviaro*, 353 U.S. at 60. *See also United States v. Fishel*, 686 F.2d 1082 (5th Cir. 1982). There may be circumstances, such as witness's safety or the protection of other ongoing investigations, however, that justify the court in refusing to permit a known informant to be subpoenaed to testify at trial or to prevent his address from being provided to the defendant. *United States v. Long*, 533 F.2d 505 (9th Cir. 1976) (holding that it was proper for the district court to quash a trial subpoena issued to a known informant once it made an *in camera* determination that the informant did not have information useful to the defense). The government, however, may be required to make an informant available for an interview by defendant's counsel prior to trial. *Fishel*, 686 F.2d at 1092, n. 12; *United States v. Montgomery*, 998 F.2d 1468, 1473 (9th Cir. 1993); *United States v. LaRizza*, 72 F.3d 775, 779 (9th Cir. 1995); and *United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001). The Government has not made any showing that the disclosure of information regarding a known informant would endanger the informant or compromise other ongoing investigations.

*Acosta* summarized the types of information the Government is obligated to disclose about its cooperating witnesses or informants:

> Payments to witnesses are *Brady* material. *Bagley v. Lumpkin,* 798 F.2d 1297, 1302 (9th Cir. 1986). Cooperation agreements are *Brady* material. *United States v. Kojayan,* 8 F.3d 1315, 1322 (9th Cir. 1993). Government information criticizing the integrity of the confidential informant are *Brady* materials. *United States v. Brumel-Alvarez,* 991 F.2d 1452, 1458 (9th Cir. 1992). A prosecutor's interview notes of a government witness constitute *Brady* material to

> the extent they contain evidence of conflicting statements by the witness. *United States v. Service Deli, Inc.,* 151 F.3d 938, 942-43 (9th Cir. 1998). Rough interview notes of federal agents ordinarily need not be disclosed pursuant to the Jencks Act, *United States v. Alvarez,* 86 F.3d 901, 904 n. 2 (9th Cir. 1996), but must be preserved, *United States v. Durham,* 941 F.2d 858, 860-61 (9th Cir. 1991). However, although rough notes are not ordinarily discoverable under Jencks, they "must be disclosed pursuant to *Brady* if they contain material and exculpatory information." *Alvarez,* 86 F.3d at 904 n. 2.

357 F.Supp.2d at 1243.

Defendant's Request No. 14 specifically requests "[a]ll reports of interviews, interviews and arrest reports of Bryan Semel, Sari Gray, Thomas Jeffrey Labissoniere, Reynaldo Cabrera and Vaughtriva Isaac within the possession of the prosecution team, as defined by USAM 9-5.001." Defendant states that the Government has produced reports of investigations regarding Bryan Semel, Sari Gray, T.J. Labissoniere and Vaughtriva Isaac, but has not produced a report specific to Reynoldo Cabrera. If the Government has a report concerning Mr. Cabrera that relates to the investigation of the Defendant, then it should produce that report in accordance with Rule 16. Information regarding these individuals such as that set forth in the above quote from *Acosta,* should also be produced to the Defendant in accordance with *Brady/Giglio.* Defendant has not cited any authority showing that it is entitled to an informant's or cooperating witness's tax returns or a list of his or her assets. There is no evidence that the Government is in possession of such information. Defendant's request for tax returns or lists of witness assets is therefore denied.

Request No. 5 also seeks information relating to all other investigations in which confidential informants have been involved. A defendant is not automatically entitled to information about other investigations or cases in which the confidential informant has provided information or has testified. In *United States v. Abonce-Barrera*, 257 F.3d 959, 969-70 (9th Cir. 2001), the court held that the government was not required to produce a list of all cases in which the informant testified where the defendant failed to show how the list would be material under *Brady.* In *United States v. Flores,* 540 F.2d 432, 437-38 (9th Cir. 1976), the court held that such a request was not material when it was based only on "a hunch" that the informant may have tampered with evidence in other cases. *See also United States v. Cutler,* 806 F.2d 933, 935 (9th Cir. 1986). In *Carriger v. Stewart*, 132 F.3d 463, 479-482 (9th Cir. 1997), however, the court held

12

that the informant's prior record of manipulating the "plea-bargaining" process by providing false information and testimony against other persons in order to avoid prosecution was material to his impeachment and should have been produced to the defendant in accordance with *Brady/Giglio.*

Defendant Bararia has made no specific showing that any informant's conduct in another case is relevant or material to this case. The Court, therefore, will not order the Government to produce information about an informant's involvement in other investigations. This, however, does not relieve the Government of its duty to disclose such information if it impeaches an informant or cooperating witness or is otherwise favorable to the Defendant.

### 3. **Grand Jury Testimony.**

Defendant's Request No. 7 seeks "Grand Jury testimony made in seeking the return of the indictment herein." Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure states that the court may authorize disclosure of a grand jury matter at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury. In *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986), the court stated that a request for grand jury transcripts is within the sound discretion of the trial court, but that the court should order disclosure of grand jury transcripts only when the party seeking them has demonstrated that a particularized need exists which outweighs the policy of secrecy. *United States v. Perez*, 67 F.3d 1371, 1381 (9th Cir. 1997), *withdrawn in part on reh'g*, 116 F.3d 840 (9th Cir. 1997), states that the standards the trial court should apply in granting disclosure of grand jury transcripts are (1) that the desired materials will avoid a possible injustice, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that only the relevant parts of the transcripts should be disclosed. *See also United States v. Murray*, 2013 WL 183970, *3 (N.D.Cal. 2013). Defendant Bararia has not demonstrated a particularized need for disclosure of grand jury transcripts and the Court therefore denies his motion for production of grand jury transcripts.

### 4. **Defendant's Other Requests.**

Defendant's Request No. 2 seeks privilege logs for electronic and wire interceptions. Defendant notes that the Government stated at the April 16, 2013 hearing that it did not generate privilege logs. Apparently, Defendant wants some further confirmation of this. The Court directs

the Government to respond in writing to Defendant that it has no privilege logs for electronic and wire interceptions, if in fact that is the case. Otherwise, it should produce its privilege logs.

Defendant's Request No. 4 seeks ten-day reports for the electronic and wire interceptions. According to Defendant, the Government stated that it will produce the reports once the Court orders that they be unsealed. The Court will therefore order the ten-day reports to be produced to Defendant once they are unsealed.

Defendant's Request No. 8 asks for any and all communications, in any format, made with the media and press concerning this case, including any and all decisions made in filing the unsealed, unredacted complaint. Defendant noted that the Government denies that such communications exist. Defendant argues, however, that there must be some record concerning the Government's decision to file an unsealed and unredacted criminal complaint against Defendant and speculates that this decision may have been related to communication with the news media. Based on the Government's representation that no such communications occurred, the Court denies this request. Additionally, internal memoranda regarding Government counsel's decision to file the complaint unsealed is protected from disclosure under Rule 16(a)(2).

Defendant's Request No. 9 asks for any and all reports, interviews and statements concerning "Sergio," the likely target of supply in this case. The Defendant states that he provided the Government with a thorough description of a man named "Sergio" who ran a drug trafficking organization and who allegedly made threats to Defendant and his family that forced the Defendant to continue selling controlled substances. The Government asserts that "Sergio" is a figment of Defendant's imagination. Defendant wants production of any reports that memorialize the agent's decision not to pursue an investigation into Sergio's involvement. Investigation reports regarding the Government's investigation efforts, or lack thereof, to determine the existence of "Sergio" could be helpful to Defendant's defense that he was coerced by this alleged individual. Such reports, if they exist, should therefore be produced to Defendant.

Defendant's Request No. 10 seeks all prior court authorized interceptions used in this investigation, including but not limited to investigation of Arsen Manukyn as referenced in the Probable Cause Affidavit of February 8, 2012 in support of Title III interception of

1  communications occuring over 702.217.6506.  Defendant states that he received a few reports of
2  investigation concerning physical surveillance of Mr. Manukyn, but not anything related to
3  interceptions of his communications.  To the extent there are intercepted communications of Arsen
4  Manukyn related to the investigation of or charges against Defendant Bararia, they should be
5  produced.

6  Defendant's Request No. 11 requests the tracking warrant and affidavit in support of a GPS
7  device installed on the vehicle of Arsen Manukyn, as referenced in the Affidavit of February 8,
8  2012, in support of Title III interception of communications occurring over 702.217.6506.  These
9  documents should be produced to Defendant pursuant to Rule 16(a)(1)(E)(i).

10  Defendant's Request No. 12 seeks all bank records used in claiming money laundering as
11  alleged in the Affidavit of February 8, 2012, in support of Title III interception of communications
12  occurring over 702.217.6506.  These documents should be produced to Defendant pursuant to Rule
13  16(a)(1)(E)(i).

14  Defendant's Request No. 13 seeks all communications and documents involving the
15  decision not to transport Defendant to an emergency room on or about May 4, 2012, after his arrest
16  and evaluation by emergency medical providers.  Defendant was taken into custody pursuant to a
17  warrant for his arrest on a petition to revoke his pretrial release.  Defendant was in the custody of
18  the U.S. Marshal on May 4, 2012 when he reportedly experienced a medical episode.  The
19  Government asserts that it was not involved in the Marshal's decision whether to transport
20  Defendant to the hospital for further assessment.  The Defendant has not shown that Request No.
21  13 is relevant to the investigation or prosecution of the charges in this case and it is therefore
22  denied.

23  Defendant's Request No. 16 requests all jail recordings of Defendant obtained by the
24  Government during his incarceration, including all privileged communications received and
25  reviewed.  Such recordings, if they exist, should be produced to Defendant pursuant to Rule
26  16(a)(1)(A) and (B)(i).

27  . . .
28  . . .

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Require Disclosure of Material Information (#64) is **granted**, in part, and **denied**, in part, in accordance with the foregoing provisions of this order.

Dated this 2nd day of July, 2013.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge